UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMEERA AHMAD

                                    Plaintiff,

v.

KHALID S. MAHRAN, and
KIDNEY CARE, P.C.

                                  Defendants.

**REPORT AND RECOMMENDATION**

06-CV-00339(A)(M)

---

## INTRODUCTION

This action was referred to me by Hon. Richard J. Arcara to conduct "all pre-trial matters", including "hearing and disposition of all non-dispositive motions" and to "hear and report upon dispositive motions" (Dkt. #17). Before me are defendants' motion for summary judgment (Dkt. #21) and plaintiff's motion for partial summary judgment (Dkt. #26). Oral argument of the motions was held on April 25, 2008.

On May 8, 2008, the parties filed a stipulation dismissing the action with prejudice, conditioned "on full performance of the parties' settlement agreement for ninety (90) days from entry hereof" (Dkt. #52). The stipulation was approved by Judge Arcara the next day (Dkt. #53). On July 9, 2008, plaintiff moved to reopen the case, arguing that defendant had failed to comply with the settlement agreement (Dkt. #54). Defendants' attorneys thereafter cross-moved for leave to withdraw (Dkt. #57), and that motion was granted (Dkt. #63). Defendants then retained new attorneys, who stated that they did not oppose plaintiffs' motion to reopen (Dkt. #65).

Accordingly, by Report and Recommendation dated September 3, 2008 (Dkt. #66), which was subsequently adopted by Judge Arcara (Dkt. #68), I recommended "that the case be re-referred to me for supervision of pretrial proceedings, including the preparation of a Report and Recommendation concerning the summary judgment motions which were pending at the time of the settlement".

For the following reasons, I recommend that the motions (Dkt. ##21, 26) be GRANTED in part and DENIED in part.

## BACKGROUND

A.   **The Employment Contract**

On February 22, 2005 the parties executed a contract for the employment of plaintiff as a primary care physician by defendants Khalid Mahran and/or Kidney Care, P.C. in Irving, New York (Dkt. #1, Ex. B)[1]. Section 1(b) of the contract conditioned plaintiff's employment on her "being eligible for hospital privileges", and §1(c) required her to obtain a work visa.

Plaintiff alleges that defendants breached the contract by refusing to employ her at the stipulated contractual salary of $110,000 per year. Defendants allege that plaintiff repudiated the contract by seeking alternative employment with the Veterans Administration, and by failing

---

[1] Although it is unclear whether defendant Mahran executed the contract in an individual capacity as well as on behalf of defendant Kidney Care, P.C. ("Kidney Care"), it is undisputed that at least Kidney Care is a party to the contract. "Whether Dr. Mahran is also an employer . . . is not without ambiguity and that issue is not presented by Plaintiff at this time." Plaintiff's Memorandum of Law (Dkt. #26), p. 8.

to fulfill the conditions of the contract, including taking the steps necessary to obtain hospital privileges.

**B.     Plaintiff's Complaint**

Plaintiff's complaint (Dkt. #1) alleges three causes of action: first, for breach of the employment contract (Id., ¶¶ 8-29); second, for intentional infliction of emotional distress, alleging that defendant Mahran attempted to force her to work for a salary lower than that specified in the contract, and wrongfully attempted to extort monies from her (Id., ¶¶30-43); and third, for intentional interference with prospective contractual relations, alleging that defendant Mahran intentionally interfered with her prospective contractual relations with the Veterans Administration by refusing to release her from employment (Id., ¶¶44-51).

**C.     Defendants' Counterclaims**

Defendants assert three counterclaims against plaintiff: first, for liquidated damages of $250,000 due to plaintiff's breach of the employment contract (Dkt. #3, ¶¶28-32); second, for recovery of a loan of $10,300 to plaintiff, allegedly secured by an unexecuted promissory note (which inexplicably recites the amount of $15,940, rather than the $10,300 allegedly loaned to plaintiff) (Id., ¶¶33-36); and third, in the amount of $250,000 for damages to Dr. Mahran's professional reputation (Id., ¶¶37-38).

**D.     The Summary Judgment Motions**

Defendants seek dismissal of plaintiff's complaint, as well as judgment on their counterclaim for liquidated damages. Defendants' Memorandum of Law (Dkt. #25), p. 25. Plaintiff seeks dismissal of defendants' first and third counterclaims, and asks the court to declare the starting date of the employment contract and "that defendants or one of them is liable to plaintiff for breach of the February 22, 2005 contract". Plaintiff's Notice of Motion (Dkt. #26), p. 1.

## DISCUSSION AND ANALYSIS

**A.     Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.] Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002)).

However, while the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted).

**B.     Date of Commencement of the Contract**

Section 3 of the contract provides that "the terms of the Agreement shall commence on or about October 1, 2005 and within ninety (90) days of waiver approval, or as soon thereafter as the Physician has received a proper employment authorization visa from the U.S. Citizenship and Immigration Service and is authorized to practice medicine in the State of New York". Defendants argue that because "plaintiff's H-1B visa and J-1 waiver were both approved on November 7, 2005" (defendants' Memorandum of Law (Dkt. #25), p. 9), therefore "the contract gave Dr. Mahran 90 days from November 7, 2005 to begin Ahmad's employment". Id., pp. 15-16; see also Dkt. #24, ¶31 ("under the terms of their contract, Dr. Mahran had until February 7, 2006 to employ Dr. Ahmad").

Plaintiff, by contrast, argues that the "90 day" reference in the contract gives her, not defendants, the option to decide when within the 90 days of waiver approval her employment would commence. She notes that the contractual language "tracks the statutory requirement that

employment begin within ninety (90) days of the granting of the waiver (8 U.S.C. 1184(l)(1)(C)(ii)". Plaintiff's Memorandum of Law (Dkt. #26), p. 4.[2]

The contract is certainly no model of clarity with regard date on which plaintiff's employment was to commence. Since it was drafted by Mr. Berger on plaintiff's behalf (Berger affidavit (Dkt. #26, Ex. B), ¶¶ 4,15), it could be argued that any ambiguities must be resolved against plaintiff. However, "the rule of *contra proferentem* is generally said to be a rule of last resort and is applied only where other secondary rules of interpretation have failed to elucidate the contract's meaning". 11 Williston on Contracts (4th Ed.), §32:12. It comes into play only "if the extrinsic evidence does not yield a conclusive answer as to the parties' intent". McCostis v. Home Insurance Co. of Indiana, 31 F. 3d 110, 113 (2d Cir. 1994).

Here, however, the extrinsic evidence *does* yield a conclusive answer as to the parties' intent. Plaintiff testified at her deposition that she understood that "as soon as I got my H-1B visa approval, I can start my employment" (Dkt. #26, Ex. E, Affidavit of Michael M. Babat, Esq., attached deposition excerpts of Dr. Ahmad, p. 37), and defendants shared that interpretation. In the "Form I-129, Petition for a Non-Immigrant Worker", executed by Dr. Mahran under penalty of perjury on September 13, 2005, he stated that plaintiff's employment would begin upon "approval" of her waiver (Dkt. #26, annexed to deposition excerpts of Michael Berger, Esq.).

---

[2] Section 1184(l)(1)(C)(ii) provides for a waiver of the 2-year foreign residence requirement if "the alien agrees to begin employment with the health facility or health care organization within 90 days of receiving such waiver".

Plaintiff received her J-1 visa waiver, together with her H-1B visa, on November 13, 2005. Plaintiff's affidavit (Dkt. #26, Ex. C), ¶4. She informed Dr. Mahran that she was available to begin work on November 14, 2005 (*see* letter dated December 3, 2005, annexed to plaintiff's affidavit). Therefore, I conclude that under the contract, plaintiff's employment should have commenced no later than November 14, 2005, rather than February 7, 2006 (as defendants contend).

I will next consider whether summary judgment is appropriate with respect to the claims asserted by the parties.

### C.     Plaintiff's First Claim: Breach of Contract

Plaintiff alleges that defendants repudiated the contract by announcing their unwillingness to pay her the agreed-upon salary of $110,000 per year. Plaintiff testified at her deposition that around October, 2005, Dr. Mahran told her "I can't pay you, but you can start working" (Dkt. #35, Ex. D, p. 108). Her attorney, Michael Berger, has also stated under oath that "Dr. Mahran personally told me that he was unwilling to comply with the terms and conditions of the Employment Contract . . . . [and that] he desired to modify the terms of the Agreement by paying her a lower salary". Affidavit of Michael Berger (Dkt. #26, Ex. B), ¶¶ 9-10; deposition of Michael Berger (Dkt. #26), pp. 13-14.

Were this the only evidence before me, then plaintiff would be entitled to summary judgment on this cause of action. However, defendants have raised enough of a factual

issue to preclude summary judgment at this time. For example, Dr. Ahmad states under oath that "in mid November 2005, Dr. Ahmad stated that she cannot see patients in the hospital despite the contract's explicit requirement . . . and that she can only see patients in the office" (Mahran affidavit (Dkt. #22), ¶14).[3]

Based on the entire record before me, plaintiff's version of events strikes me as much more credible than defendants'.[4] However, that will be for the jury to determine. "Summary judgment is improper when the court merely believes that the opposing party is unlikely to prevail on the merits after trial . . . . the responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself". American International Group, Inc. v. London American International Corp., Ltd., 664 F. 2d 348, 351 (2d Cir. 1981).

For these reasons, I recommend that neither plaintiff nor defendants be granted summary judgment on the issue of contract breach.

---

[3]   Section 2(b) of the contract includes among plaintiff's duties the "consultation and treatment of patients in hospitals".

[4]   For example, annexed to the deposition of Michael Berger (part of Dkt. #26) is a draft of a termination letter sent by defendants' attorney, Gregory Pope, stating that plaintiff's termination was due to "the financial set back Kidney Care, P.C. has suffered", rather than to plaintiff's failure to satisfy the requirements of the contract. However, because this letter was sent in the context of settlement negotiations, its admissibility at trial would be doubtful. See Fed. R. Evid. 408(a).

D.   **Plaintiff's Second Claim: Intentional Infliction of Emotional Distress**[5]

In her second cause of action, plaintiff alleges that defendants "wrongfully withheld performance of the Employment Contract conditioned upon Plaintiff commencing employment at no set salary" (Dkt. #1, ¶¶33, 34) and "refused . . . to release Plaintiff from the Employment Contract . . . unless she paid Mahran the sum of $15,940.00" (Id., ¶37).

"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F. 3d 820, 827 (2d Cir. 1999). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable, in a civilized society . . . . Thus, it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Id.

---

[5]   Although plaintiff captions this cause of action as "Economic Duress/ Extortion/ Intentional Infliction of Emotional Distress" (Dkt. #1, p. 6), the parties' briefs address only intentional infliction of emotional distress, and I am unaware of any authority holding that economic duress or extortion are themselves causes of action. See Teachers Insurance and Annuity Association of America v. Wometco Enterprises, Inc., 833 F. Supp. 344, 348 n. 5 (S.D.N.Y. 1993) ("economic duress is not recognized in New York as a cause of action, but is only a defense"), and Minnelli v. Soumayah, 41 A.D. 3d 388, 389 (1st Dep't 2007), lv. dismissed (2008) ("extortion . . . [is a] criminal offense[ ] . . . that do[es] not imply a private right of action").

"Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Id. Even accepting the allegations of plaintiff's second cause of action as true, I do not believe that they rise to the level of "extreme and outrageous conduct" necessary to sustain this claim. Moreover, plaintiff's failure to allege or prove that she required medical treatment as a result of the alleged conduct of defendants is likewise fatal to this claim, for even where "the alleged conduct may have exceeded the bounds of decency, plaintiff's failure in this case to submit medical evidence or her lack of need to seek medical attention specifically relating to her emotional distress . . . results in conclusory or speculative allegations that are properly dismissed on summary judgment." Rodgers v. City of Rochester, 2007 WL 1557465, *8 (W.D.N.Y. 2007) (Telesca, J.).

### E. Plaintiff's Third Claim: Tortious Interference with Prospective Business Relations

In support of this cause of action, plaintiff alleges that she "told Mahran in October of 2005 that if he was unwilling to employ her then she could secure employment with the United States Veterans' Administration providing he wrote a proper release" (Dkt. #1, ¶46), that he "refused to write a proper release unless Plaintiff paid [him] the sum of $15,940.00 . . . and further release [him] from any liability for his breach of the employment contract" (Id., ¶47), and that his "wrongful acts delayed Plaintiff's employment by the Veteran's Administration by at least three (3) months" (Id., ¶51).

"Under New York law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2) the defendant's

interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F. 3d 368, 382 (2d Cir. 2000).

In seeking dismissal of this claim, defendants argue that plaintiff "does not allege that Dr. Mahran's refusal was for personal spite, as opposed to economic reasons". Defendants' Memorandum of Law (Dkt. #25), p. 20. However, plaintiff need only allege that he "acted with the sole purpose of harming the plaintiff *or* used dishonest, unfair, or improper means", Nadel, supra (emphasis added), and she has clearly done so by alleging that he insisted upon a release to which he was not entitled if he breached the employment contract, and a promissory note in an amount greater than what he had loaned to her. If proven, these allegations could suffice to sustain this claim. See New Stadium LLC v. Greenpoint-Goldman Corp., 44 A.D. 3d 449, 450 (1st Dept. 2007) ("plaintiff's allegation that defendant withheld consent to the assignment for the wrongful and illegal purposes of extorting a . . . consent fee was sufficient to plead a cause of action for tortious interference with business relations").

Defendants next argue that plaintiff "fails to plead resultant injury in non-conclusory terms". Defendants' Memorandum of Law (Dkt. #25), p. 20. However, her allegation that defendants' actions delayed her employment by the VA by at least three months (Dkt. #1, ¶51) is sufficient to sustain this claim.

Therefore, I recommend that defendants' motion to dismiss this cause of action be denied. I further conclude that these allegations, if proven, could demonstrate a "wanton or reckless disregard of plaintiff's rights" sufficient to entitle plaintiff to an award of punitive damages, Universal City Studios, Inc. v. Nintendo Co., Ltd., 797 F. 2d 70, 77 (2d Cir. 1986),

cert. denied, 479 U.S. 987 (1986), and therefore recommend that defendants' motion to dismiss this claim likewise be denied.

## F.   Defendants' First Counterclaim: Liquidated Damages

Section 11 of the contract, entitled "J-1 Visa Liquidation Damages", provides in pertinent part: "It is agreed that Employer will be substantially damaged by Physician's failure to remain employed by Employer . . . and that, considering that precise damages are difficult to calculate, Physician will agree to pay to Employer the sum of $250,000.00 for failure to fulfill his minimum three-year contract". Defendants seek summary judgment for this amount, and plaintiff seeks summary judgment declaring that §11 constitutes an unenforceable penalty.

Section 12(a) of the contract states that it "shall be governed by the laws of the State of New York". Therefore, New York law also governs the validity of the liquidated damages clause. See United States Fidelity and Guaranty Company v. Braspetro Oil Services Co., 369 F. 3d 34, 70 (2d Cir. 2004).[6] Although the clause was inserted into the contract by plaintiff's attorney Michael Berger (Berger affidavit (Dkt. #26, Ex.B), ¶14), she is not thereby estopped from challenging its enforcement, because the question of its validity affects not only the parties themselves, but involves a matter of public policy. "Liquidated damages provisions will not be enforced if it is against public policy to do so and public policy is firmly set against the imposition of penalties." Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y. 2d

---

[6]   See also 8 U.S.C. §1182(n)(2)(C)(vi)(I) ("It is a violation of this clause for an employer . . . to require an H-1B nonimmigrant to pay a penalty for ceasing employment with the employer prior to a date agreed to by the nonimmigrant and the employer. The Secretary shall determine whether a required payment is a penalty (and not liquidated damages) pursuant to relevant State law.")

420, 424 (1977). This has long been the rule in New York. *See* Keeler v. King, 1 Barb. 390 (Sup. Ct. N.Y. Co.1847) ("This court refuses to enforce a penalty; although it is agreed upon by the parties: and, even in the case where a sum is fixed upon as liquidated damages, if it appears, in fact, to be a penalty, the court will not enforce its payment").

The validity of §11 is appropriate for resolution by summary judgment, because "the enforceability of a liquidated damages provision can be determined by the Court as a matter of law". Kahuna Group, Inc. v. Scarano Boat Building, Inc., 984 F. Supp. 109, 118 (N.D.N.Y. 1997). "Whether the sum stipulated represents a liquidation of the anticipated damages or a penalty is a question of law." United States Fidelity and Guaranty Co., supra, 369 F.3d at 71.

"The law of New York provides that a contractually agreed upon sum for liquidated damages will be sustained where (1) actual damages may be difficult to determine and (2) the sum stipulated is not plainly disproportionate to the possible loss." Id. at 70. "It is plain that a provision which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable." Truck Rent-A-Center, supra, 41 N.Y. 2d at 424. "It is not material whether the parties themselves have chosen to call the provision one for 'liquidated damages', as in this case, or have styled it as a penalty . . . . Such an approach would put too much faith in form and too little in substance." Id. at 425.

As plaintiff notes, the contract calls for liquidated damages of $250,000 whether she breaches the agreement by one day or by three years, with no "sliding scale" to reflect the impact of the breach. Plaintiff's Reply Brief (Dkt. #41), p. 3. Therefore, the contract does not reflect a reasonable estimate of the anticipated actual damage which might be sustained by

defendants. While defendants argue that "the contemplated damages include the employer's damages and the damage to the Waiver program", Defendants' Reply Memorandum (Dkt. #37), p. 3, §11 addresses only the employer's damages, and does not mention damages to the Waiver program.

Defendants further argue that the clause "facilitates the Government's public policy . . . . because it encourages the immigrant physician to stay within the Health Professional Shortage Area, thus fulfilling the ARC's mission". Id., pp. 2-3. However, this argument "is a tacit admission that the provision was included not to make a fair estimate of damages to be suffered but to serve only as an added spur to performance. It is well-settled contract law that courts do not give their imprimatur to such arrangements". Priebe & Sons v. United States, 332 U.S. 407, 413 (1947).

Section 11 is also invalid because it provides that "*in addition to liquidated damages*, Employer will recover from Physician *any other consequential damages*, and reasonable attorney's fees, due to Physician's failure to provide services to Employer" (emphasis added). "Under no circumstances . . . will liquidated damages be allowed where . . . the contract provides for the full recovery of actual damages, because liquidated and actual damages are mutually exclusive remedies under New York law." United States Fidelity and Guaranty Co., supra, 369 F. 3d at 71.

Finally, it bears noting that defendants themselves refer characterize the liquidated damages clause as a "punitive damages clause" whose purpose is to "*penalize* a breaching alien physician", Defendants' Reply Memorandum (Dkt. #37), p. 3 (emphasis added), whereas "public policy is firmly set against the imposition of penalties". Truck Rent-A-Center, supra.

Accordingly, I recommend that the liquidated damages clause of the contract be declared unenforceable, and that defendants' first counterclaim, which seeks only liquidated damages, be dismissed.

### G.     Defendants' Second Counterclaim: Recovery of Loan to Plaintiff

Plaintiff has not moved for summary judgment as to this counterclaim.

### H.     Defendants' Third Counterclaim: Damage to Reputation

Plaintiff argues that defendants' "third counterclaim fails to state a claim upon which relief may be granted and that it sets forth no factual allegations whatsoever as to how Plaintiff damaged Dr. Mahran's professional reputation". Plaintiff's Memorandum of Law (Dkt. #26), p. 3. Defendants respond that "this aspect of Plaintiff's motion is conceded". Defendants' Reply Memorandum of Law (Dkt. #37), p. 1. Therefore, I recommend that defendants' third counterclaim be dismissed.

### CONCLUSION

For these reasons, I recommend that defendant's motion (Dkt. #21) be GRANTED to the extent of dismissing plaintiff's second cause of action, but otherwise be DENIED, and that plaintiff's motion (Dkt. #26) be GRANTED to the extent of (1) declaring that the date for commencement of employment under the contract was no later than November 14, 2005, and (2) dismissing defendants' first and third counterclaims, but otherwise be DENIED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning</u>

objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:	January 5, 2009

_/s/ Jeremiah J. McCarthy_
JEREMIAH J. MCCARTHY
United States Magistrate Judge
